UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSHUA GOODWIN,

|                        | **REPORT** |
|------------------------|------------|

                                   Plaintiff,          **REPORT**
                                                       **and**
                    v.                                 **RECOMMENDATION**

SUPT.  JOHN W.  BURGE,                                 **08-CV-00660A(F)**
C.O. J. SHOPE, and
C.O. B. SUMMERS,

                                   Defendants.

_____

APPEARANCES:        JOSHUA GOODWIN, *Pro Se*
                    98-B-1542
                    Green Haven Correctional Facility
                    Box 4000
                    Stormville, New York 12582-0010

                    ERIC T. SCHNEIDERMAN
                    Attorney General, State of New York
                    Attorney for Defendants
                    KIM S. MURPHY
                    Assistant New York Attorney General, of Counsel
                    Main Place Tower
                    Suite 300A
                    350 Main Street
                    Buffalo, NY 14202

## JURISDICTION

        This case was referred to the undersigned by Honorable Richard J.  Arcara, on

April 2, 2009, for pretrial matters including report and recommendation on dispositive

motions.  The matter is presently before the court on Defendants' motion for summary

judgment (Doc. No. 19), filed March 29, 2010.

**BACKGROUND**

Plaintiff Joshua Goodwin ("Plaintiff" or "Goodwin"), an inmate in the custody of New York State Department of Corrections ("DOCS"), and proceeding *pro se*, commenced this action while incarcerated at Elmira Correctional Facility ("Elmira" or "the correctional facility"), alleging Defendants Correctional Officer ("C.O.") J. Shope ("Shope"), and C.O. B. Summers ("Summers") (together, "Defendants"),[1] violated Plaintiff's Eighth Amendment rights.  In particular, Plaintiff alleges that on July 3, 2007, Defendant Shope allowed Plaintiff to sit in a broken chair, and then laughed at Plaintiff when the chair collapsed, causing Plaintiff to fall to the floor, allegedly injuring Plaintiff's back.  First Cause of Action.  Plaintiff also alleges that on July 30, 2007, Defendant Summers ordered Plaintiff to ascend a flight of stairs, in violation of a medical restriction, as a result of which Plaintiff fell and injured his back, shoulder, and head. Second Cause of Action.  On March 31, 2009, answers were filed by Shope (Doc. No. 6), and Summers (Doc. No. 7).

On March 29, 2010, Defendants filed the instant motion seeking summary judgment (Doc. No.19) ("Defendants' motion"), along with supporting papers, including a Statement of Undisputed Facts (Doc. No. 20) ("Defendants' Statement of Facts"), Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 21) ("Defendants' Memorandum"), the Declaration of Joshua J. Shope (Doc. No. 22) ("Shope Declaration"), with exhibits A through C ("Shope Declaration Ex(s). __"),

---

[1] Elmira Superintendent John W. Burge ("Burge"), who was also sued by Plaintiff, was terminated as a defendant to this action by Order filed December 3, 2008 (Doc.  No. 4), for lack of personal involvement in the alleged constitutional deprivations.

the Declaration of Robert J. Summers (Doc. No. 23) ("Summers Declaration"), with

exhibit A ("Summers Declaration Exh. A"), and the Declaration of Elmira Inmate

Grievance Program Officer/Temporary Supervisor Steven Nowaczyk (Doc. No. 24)

("Nowaczyk Declaration"), with attached exhibits A through C ("Nowaczyk Declaration

Exh(s). __").

On May 19, 2010, Plaintiff filed "Defendant's [*sic*] Affidavit in Opposition to

Motion for Summary Judgment (Doc. No. 27) ("Plaintiff's Affidavit"), with attached

exhibits A though F ("Plaintiff's Exh(s). __"), and a second volume of exhibits not

separately denominated by letter, but only by the page number of the volume

("Plaintiff's Exhs. at __").  In further support of summary judgment, Defendants filed on

May 28, 2010, the Reply Declaration of Assistant Attorney General Kim S. Murphy

(Doc. No. 28) ("Murphy Reply Declaration").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion should be GRANTED.


## FACTS[2]

Unless otherwise noted, at all times relevant to this action, Plaintiff Joshua

Goodwin ("Plaintiff" or "Goodwin"), was incarcerated at Elmira.  Plaintiff's medical

records establish Plaintiff suffers from arthritis in his back and knees, and in 2005,

underwent anterior cruciate ligament ("ACL") surgery on his left knee to repair a torn

ligament, during which surgical clips or staples were inserted into the knee.[3]  Plaintiff's

---

[2] Taken from the pleadings and motion papers filed in this action.

[3] It is not clear from the record at which correctional facility Plaintiff was incarcerated when he
underwent the left knee ACL surgery in 2005.

Exhs., *passim*.  On November 17, 2006, Plaintiff, then incarcerated at Great Meadow Correctional Facility, was approved by Dr. H. Silverberg, until further notice, to receive meals in his cell, and "locks on the flats," and was restricted from climbing stairs. Plaintiff's Exhs. at 3.

On March 13, 2007, Plaintiff, then incarcerated at Elmira, underwent a second surgical procedure to remove the staples inserted into his left knee during the earlier surgery.  Plaintiff's Exhs. at  *Id*.  At various times, Plaintiff has needed crutches or a cane to effectively ambulate.  Plaintiff's Exhs. at 1 (crutches), and 9 (cane).  An undated "Program Clearance" form completed at Elmira, notes Plaintiff is permanently unable to "climb stairs/ladders."[4]  *Id*.  at 29.  On March 28, 2007, Plaintiff, then incarcerated at Elmira, was prescribed indefinite use of a cane.  Plaintiff's Exhs. at 9.  On April 5, 2007, Plaintiff presented to Elmira's sick call following which a "lock on flats" request (to be housed where the need to move between floor was minimal) was submitted along with Plaintiff's earlier restriction against stair climbing.  *Id*.  at 10.

On June 3, 2007, Plaintiff slipped in Elmira's messhall, and fell, injuring his back, and complained of severe back pain and inability to ambulate.  Plaintiffs' Exhs. at 17. Plaintiff immediately was taken to Elmira's infirmary for evaluation, and then admitted to the infirmary for observation before being transported by ambulance to the emergency room, where he was diagnosed with spasms of the lumbar and cervical spine, but was ambulatory and requested to return to his cell block. *Id*.  at 17-18.  On June 18, 2007, Plaintiff was prescribed indefinite use of a back brace.  Plaintiff's Exhs. at 20.

---

[4] The signature of the Health Care Provided who completed the form is illegible.

On July 3, 2007, at 7:15 P.M., Defendant Shope was on duty as a law library officer, when Plaintiff asked whether Plaintiff could use a specific chair next to the copy machine.  Shope gave Plaintiff permission to use the chair.  The chair, however, was broken and collapsed when Plaintiff sat on it, causing Plaintiff to fall to the floor, injuring his back ("the July 3, 2007 incident").  It is not disputed that before Plaintiff sat on the chair, it was not readily apparent that the chair was broken.

Plaintiff informed Shope that he hurt his back after Plaintiff fell from the broken chair.  Although it is disputed whether Shope laughed upon learning of Plaintiff's fall, it is not disputed that Shope immediately notified his supervising officer that Plaintiff was injured and, at 7:25 P.M. on July 3, 2007, had Plaintiff escorted to Elmira' infirmary for emergency sick call, where Plaintiff complained of mid lower back pain, was able to move his feet and legs with pain, but no swelling of Plaintiff's back, legs, or feet was noted.  Shope Declaration Ehx.  A.  X-rays of plaintiff's back taken on July 9, 2007 were negative for any acute fracture.  The record is devoid of any medical evidence establishing Plaintiff actually sustained any injury as a result of the July 3, 2007 incident.

On July 10, 2007, Plaintiff filed Inmate Grievance No. EL-32-884-07 ("Plaintiff's First  Grievance"), with regard to the July 3, 2007 incident, alleging harassment by Defendant Shope for intentionally giving Plaintiff the defective chair, and then laughing when Plaintiff fell from the collapsed chair and injured his back.  Plaintiff's First Grievance was unanimously denied on August 22, 2007, based on a lack of any evidence substantiating Plaintiff's harassment claim against Shope.  The denial of Plaintiff's First Grievance was affirmed on appeal.

On Saturday, July 7, 2007, Plaintiff fell while ascending stairs to Elmira's school and law library, allegedly because Plaintiff's left knee gave out, causing Plaintiff to injure his right shoulder.  Plaintiff was taken to emergency sick call, where Plaintiff's condition was assessed as "stable," and Plaintiff was scheduled for further evaluation and an X-ray the following Monday.  Plaintiff's Exhs.  at 23-24.  Following his July 7, 2007 fall, Plaintiff wrote to Elmira Superintendent Burge requesting that Plaintiff be excused from his scheduled class at the correctional facility's school program because Plaintiff's physical disabilities render Plaintiff unable to climb the stairs to attend the program. *Id*. at 25.  Plaintiff further explained that inmates who fail to attend scheduled classes are placed in keeplock, and Plaintiff is tired of being placed in keeplock because he is unable to climb the stairs to attend class.  *Id*.

Plaintiff alleges that on July 30, 2007, at 1:30 P.M., he received a pass to miss his class without being placed in keeplock, but that Plaintiff was nevertheless forced to attend his program, requiring Plaintiff to climb a flight of stairs to the correctional facility's school.  While Plaintiff was climbing the stairs to the school, his knee gave out, causing Plaintiff to fall down 15 stairs, striking his head and back ("the July 30, 2007 incident").  Plaintiff was placed on a back board, his cervical spine supported with a neck brace, and taken by ambulance to the local emergency room where Plaintiff was treated for back, neck, and shoulder pain.   Plaintiff's Ambulatory Health Record notes that Plaintiff's emergency room evaluation was negative for any arm injuries, and that Plaintiff walked with a normal gait.  Plaintiff's Exhs. at 28.  It is further noted that the program committee was given notice that Plaintiff was unable to climb stairs. *Id*.

On August 1, 2007, Plaintiff filed an Inmate Grievance ("Plaintiff's Second

Grievance"), regarding the July 30, 2007 incident, asserting Plaintiff was forced by the "A-man CO" to climb the stairs to attend class despite Plaintiff's presentation of a pass to miss class.  Plaintiff's Exhs. at 26.[5]

On August 15, 2007, a response to Plaintiff's Second Grievance was issued by the Inmate Grievance Resolution Committee ("IGRC") ("IGRC Response"), reporting that upon investigating the July 30, 2007 incident, the IGRC was unable to find any medical order excusing Plaintiff from climbing stairs.  Plaintiff's Exhs. at 27.  Because Plaintiff's failure to provide any documentary evidence that his medical condition would not permit Plaintiff to climb stairs was consistent with the IGRC's investigation of the matter, the IGRC denied Plaintiff's request.  *Id*.  Although Plaintiff checked a box on the IGRC's Response indicating he disagreed with the IGRC's finding and wished to appeal to the Superintendent, *id.*, it is undisputed that Plaintiff never filed an appeal of his Second Grievance regarding the July 30, 2007 incident.

**DISCUSSION**

1.    **Summary Judgment**

Defendants move for summary judgment, dismissing both claims against them on the basis that Plaintiff is unable to establish the existence of a material issue of fact which, if decided in Plaintiff's favor, would support a jury verdict for Plaintiff. Defendants' Memorandum at 3, 7-14.  Defendants also seek summary judgment with regard to the Second Cause of Action based on Plaintiff's failure to exhaust

---

[5] Plaintiff does not further identify the "A-man CO."

administrative remedies.  *Id*. at 3-7.  Defendants further maintain they are qualifiedly immune from liability on both claim. *Id*.  at 15-18.

In opposition to summary judgment, Plaintiff asserts that Plaintiff's physical impairments should have been evident to Defendant Shope, Plaintiff's Affidavit ¶ 9, and that Defendant Shope's handwritten statement was written to corroborate an internal Memorandum prepared in connection with the investigation of Plaintiff's First Grievance.  *Id*. ¶¶ 7, 13.  In further support of summary judgment, Defendants point to Plaintiff's failure to specifically argue against summary judgment on the Second Cause of Action, Murphy Reply Declaration ¶ 6, and that the only issues of fact established in opposing summary judgment, even if true, do not rise to Eighth Amendment violations. *Id*. ¶ 7.

Summary judgment on a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be

sufficient to support a jury verdict in its favor and "may not simply rely on conclusory

statements or on contentions that the affidavits supporting the motion are not credible."

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995)

(citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment

motion are not 'genuine' issues for trial."  *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614,

619 (2d Cir.1996).  Furthermore, because Plaintiff is proceeding *pro se*, the court is

required to liberally construe Plaintiff's papers submitted in opposition to summary

judgment.  *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir.

2009) ("It is well established that the submissions of a pro se litigant must be construed

liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting

*Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))

Plaintiff maintains Defendants violated his civil rights under 42 U.S.C. § 1983,

pursuant to which an individual may seek damages against any person who, under

color of state law, subjects such individual to the deprivation of any rights, privileges, or

immunities protected by the Constitution or laws of the United States. Section 1983,

however, "'is not itself a source of a substantive rights,' but merely provides 'a method

for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266,

271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first

step in any such claim is to identify the specific constitutional right allegedly infringed."

*Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).

In the instant case, although the Complaint alleges Defendants violated Plaintiff's

under the Eighth Amendment, Plaintiff fails to specify the basis for such violation.[6]

Nevertheless, because Plaintiff is proceeding *pro se*, the court liberally construes the

pleadings, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of *pro se* complaint

are held to less stringent standards than formal pleadings drafted by attorneys),and

construes the evidence in the light most favorable to the non-moving party. *Rattner v.*

*Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).

In both causes of action, Plaintiff essentially alleges Defendants failed to protect

Plaintiff by creating the prison conditions in which Plaintiff sustained injuries, including

allowing Plaintiff to sit on a defective chair, which collapsed when Plaintiff sat on it,

causing Plaintiff to fall and injure his back, (First Cause of Action), and ordering Plaintiff

to climb a flight of stairs despite Plaintiff's physical impairments including Plaintiff's

severely arthritic left knee, which gave out, causing Plaintiff to fall down the stairs,

striking his head and back (Second Cause of Action).  A prison inmate's failure to

protect claim challenges the conditions of confinement as in violation of the Eighth

Amendment's prohibition against cruel and unusual punishment.  *Farmer v.  Brennan*,

511 U.S. 825, 833 (1994) (the Eighth Amendment not only prohibits prison officials from

using excessive physical force against inmates, but also requires prison officials provide

humane conditions of confinement, including ensuring inmates receive adequate food,

---

[6] The Eighth Amendment provides, in its entirety, "[e]xcessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.

clothing, shelter and medical care, as well as taking reasonable measures to guarantee the safety of inmates).   As such, the only portion of the Eighth Amendment relevant to Plaintiff's claims is the prohibition against "cruel and unusual punishments," U.S. CONST. amend. VIII, based on the prison conditions in which Defendants failed to protect Plaintiff by allowing Plaintiff to sit on the broken chair and ordering Plaintiff to climb stairs despite his physical impairments.[7]

To establish an Eighth Amendment violation based on prison conditions, a plaintiff must demonstrate "that it is contrary to current standards of decency for anyone to be exposed against his will" to the challenged prison conditions.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  An Eighth Amendment claim based on prison conditions must satisfy

> both an objective element - - that the prison official's transgression was "sufficiently serious" - - and an objective element - - that the officials acted, or omitted to act, with a "sufficiently culpable state of mind," *i.e.*, with "deliberate indifference to inmate health or safety."

*Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer*, 511 U.S. at 834).

As to the objective element, while the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), prison inmates may not be denied "the minimal civilized measure of life's necessities."  *Id*. at 347.  The Supreme Court has held that the Eighth Amendment requires that inmates not be

---

[7] That Plaintiff has not alleged he was denied adequate medical care following either the July 3 or 30, 2007 incident, is consistent with Plaintiff's First and Second Grievances, in which Plaintiff complains only that Defendant Shope intentionally gave Plaintiff a broken chair, and then laughed when the chair collapsed after Plaintiff sat on it, First Grievance, and that Defendant Summers, after conferring with Elmira's medical department that Plaintiff was not restricted from climbing stairs, directed Plaintiff climb the stairs to attend his program, Second Grievance.

deprived of their "basic human needs - - *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling*, 509 U.S. at 32 (internal citation and quotation omitted). "Nor may prison officials expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'" *Phelps*, 308 F.3d at 185 (quoting *Helling*, 509 U.S. at 35). The Eighth Amendment's objective prong requires an inmate "prove that the conditions of his confinement violate contemporary standards of decency." *Id*.

As to the subjective element, the Supreme Court has held that

a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer*, 511 U.S. at 837.

The "deliberate indifference" element is equivalent to criminal law's reckless indifference standard. *Id*. at 839-40.

In the instant case, both of Plaintiff's claims are devoid of any issue of fact which, if decided in Plaintiff's favor, would establish Defendants acted with deliberate indifference to an unreasonable risk to Plaintiff's health or safety, as required to satisfy both the objective and subjective elements necessary to support Eighth Amendment claims based on prison conditions. *Phelps*, 308 F.3d at 185

**2.     First Cause of Action**

Defendants argue in support of summary judgment on the First Cause of Action that Plaintiff never alleges Defendant Shope knew the chair he gave to Plaintiff in the law library on July 3, 2007 was broken, or that it was obvious the chair was defective

and likely to collapse if sat upon.  Defendants' Memorandum at 10.  In support of

Defendants' argument that Defendant Shope was unaware the chair was defective,

Defendant Shope specifically states that there was no sign on the chair warning that it

was broken and should not be used, the chair had "no visible defects," and that Shope

"inspected the chair after plaintiff's claim that it was broken, and its legs were still

intact."  Shope Declaration ¶ 7.  In opposition to summary judgment, Plaintiff asserts

that because Plaintiff wore back and knee braces and walked with a cane, it should

have been evident that Plaintiff was physically impaired, Plaintiff's Affidavit ¶ 9, and the

fact that Defendant Shope's handwritten statement regarding the July 3, 2007 incident

is dated August 6, 2007, establishes that Shope's statement was written to corroborate

an internal Memorandum prepared by Sgt. A. Tipton ("Sgt. Tipton"), on July 14, 2007 in

connection with the investigation of Plaintiff's First Grievance.  *Id*. ¶¶ 7, 13.  In further

support of Defendants' motion, Defendants argue the only issues of fact established in

opposing summary judgment are (1) whether Defendant Shope laughed at Plaintiff after

Plaintiff fell from the broken chair, Murphy Reply Declaration ¶ 8; (2) whether Shope

saw Plaintiff fall to the floor when the chair collapsed, *id.* ¶ 9; (3) the absence of any

picture of the collapsed chair showing visible defects, *id.* ¶ 10; (4) why Defendant

Shope's declaration was dated August 6, 2007, more than one month after the July 3,

2007 incident, *id.* ¶ 11; and (5) that Plaintiff, at a deposition in connection with a

separate lawsuit, was asked only about his knee injury, and not his back injury, *id.* ¶ 12,

all allegations which, even if true, do not rise to Eighth Amendment violations.  *Id*. ¶ 7.

In opposing summary judgment, Plaintiff submits an internal Memorandum

prepared by one Sgt. Tipton, Plaintiff's Exh. A ("Sgt. Tipton's Memorandum"), who,

upon investigating the July 3, 2007 incident, wrote that Shope reported assenting to Goodwin's request to use a chair, from which Goodwin, a short time later, advised he had fallen and was injured, and that Goodwin immediately arranged for Goodwin to be escorted to the infirmary.  Plaintiff's Exh. A. During his investigation, Sgt. Tipton interviewed one Rojelio Alcado ("Alcado"), an inmate identified by Plaintiff as an eyewitness to the July 3, 2007 incident.  *Id*.  Alcado, however, told Sgt. Tipton that he did not actually see Plaintiff fall from the chair; rather, Alcado only saw Plaintiff lying on the floor and heard Plaintiff claim the chair broke when he sat on it.  *Id*.  Alcado further denied hearing any conversation between Plaintiff and Shope regarding Plaintiff's request to use the chair. *Id*.  Sgt. Tipton also noted that the Inmate Injury Report completed in connection with the July 3, 2007 incident, Plaintiff's Exh. E, establishes that only 20 minutes elapsed between the occurrence of the incident and the time Plaintiff was examined by a nurse at Elmira's emergency sick call.  Sgt. Tipton's Memorandum.  Sgt. Tipton concluded that "[c]ontrary to inmate Goodwin's claims, there is no evidence of causation or irresponsibility on the part of Officer Shope.  This incident was nothing more than a minor, unfortunate, accident." *Id*.

Sgt. Tipton's Memorandum is consistent with Shope's Memorandum, dated July 13, 2007, Plaintiff's Exh. D ("Shope's First Memorandum"), that Plaintiff, who was present in Elmira's law library on July 3, 2007, pursuant to a library call-out, asked if he could use a chair sitting by the copier, and Shope gave Plaintiff permission to do so. Shope's Memorandum.  Plaintiff then brought the chair to a law library table and, a few minutes later, advised Shope that when he sat on the chair, it collapsed, causing Plaintiff to fall, injuring his back.  *Id*.  Shope immediately notified his supervisor of the

14

incident, and had Plaintiff escorted to Elmira's infirmary for emergency sick call at 7:25 P.M.  *Id*.  In a second memorandum written Shope on August 6, 2007, Plaintiff's Exh. B ("Shope's Second Memorandum"), Shope repeats the same statements made in Shope's First Memorandum, adding only that "[a]t no time prior to, during, or after the incident did I laugh at inmate Goodwin.  When the incident was reported, I immediately notified my supervisor and had the inmate escorted to the infirmary for emergency sick call."  Shope's Second Memorandum.  According to Defendants, Murphy Reply Declaration ¶ 11, Shope's Second Memorandum was written to address Plaintiff's allegation in his First Grievance that Shope laughed at Plaintiff.  *See* August 1, 2007 message from Elmira Inmate Grievance Supervisor Martin J. Titus ("Titus") to IGP Supervisor John N. Antonelli ("Antonelli") (advising "I am going to need CO Shope to address the Grievant's allegation of unprofessional conduct, ie., [*sic*] laughing at him when he fell.").  Both Shope's First and Second Memoranda are consistent with the Inmate Injury Report completed in connection with the July 3, 2007 incident, establishing Plaintiff was injured at 7:15 P.M., and was seen in emergency sick call at 7:30 P.M.  Plaintiff's Exh.  E.

Defendants' evidence thus establishes the absence of any genuine issue of fact which, if decided in Plaintiff's favor, would support a verdict for Plaintiff.  In particular, insofar as Plaintiff maintains that Defendant Shope laughed at him after the chair collapsed, causing Plaintiff to fall, even if true, laughing at an inmate does not violate the Eighth Amendment.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding inmate plaintiff's allegation that prison guards called inmate names "did not allege any appreciable injury and was properly dismissed" by the district court).  *See*

*also Johnson v. Eggersdorf*, 8 Fed.Appx. 140, 143 (2d Cir. 2001) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged (citing *Purcell*, 790 F.2d at 265, and *Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) (finding that a claim for verbal harassment may be sustained if emotional or psychological injury is alleged, but stating "that plaintiff's allegations of any psychological and emotional scars attributable to defendants' conduct to be *de minimus* under the facts of this case"))). In the instant case, even assuming Shope did laugh at Plaintiff when he fell from the chair, not only would such laughter fail to establish Shope acted with deliberate indifference to an unreasonable risk to Plaintiff's health or safety, when Shope authorized Plaintiff to sit in the chair alleged by Plaintiff to be in a dangerous condition, *Phelps*, 308 F.3d at 185, the record is completely devoid of any allegation that Plaintiff, as a result of such verbal humiliation, suffered any emotional or psychological injury necessary to sustain the claim.

Plaintiff's assertion that Shope saw Plaintiff lying on the floor after falling from the chair, Plaintiff's Affidavit ¶ 7, by itself, fails to establish a genuine issue of fact defeating summary judgment. Even if true, not only would such assertion fail to establish Shope acted with deliberate indifference to an unreasonable risk to Plaintiff's health or safety, *Phelps*, 308 F.3d at 185, it also would be inconsistent with the Inmate Injury Report, Plaintiff's Exh. E, which establishes the July 3, 2007 incident occurred at 7:15 P.M., and that by 7:30 P.M., Plaintiff had been escorted to Elmira's emergency sick call and examined by a nurse. It is significant that the Inmate Injury Report was submitted by Plaintiff, who does not challenge its accuracy. Accordingly, even assuming, *arguendo*, Shope saw Plaintiff fall from the chair to the floor, the Inmate Injury Report establishes

16

Shope acted with the necessary alacrity to obtain medical treatment for any possible injury.

Although Plaintiff takes issue with the fact that in his declaration, Shope states he "inspected the chair after plaintiff's claim that it was broken, and its legs were still intact," Shope Declaration ¶ 7, Defendants failed to submit any picture of the collapsed chair showing visible defects, Plaintiff's Affidavit ¶ 10, the burden of establishing Shope's knowledge of the chair's defective condition *prior* to the July 3, 2007 incident, so as to establish Shope acted with deliberate indifference to an unreasonable risk to Plaintiff's health or safety, *Phelps*, 308 F.3d at 185, is on Plaintiff, not Defendants.  As such, the absence of any picture of the chair, taken either prior to or after the July 3, 2007 incident, has no bearing on the case.  No other plausible evidence is offered by Plaintiff to establish Shope's awareness of the risk Plaintiff associates with his use of the chair.  As such, no evidence tends to create a material issue of fact concerning Shope's alleged deliberate indifference to Plaintiff's safety, a requisite element of Plaintiff's claim.

Plaintiff's observation the Defendant Shope prepared two versions of his memorandum regarding the July 3, 2007 incident, Plaintiff's Affidavit ¶ 8, is without any bearing on this case because such fact is totally irrelevant as to whether Shope acted with deliberate indifference to any unreasonable risk to Plaintiff's health or safety, *Phelps*, 308 F.3d at 185.  Moreover, the explanation provided by Defendants for the two versions of the memoranda, *i.e.*, that Shope was instructed to rewrite Shope's First Memorandum to include a response to Plaintiff's allegation that Shope engaged in unprofessional conduct by laughing at Plaintiff, Murphy Reply Declaration ¶ 11, is

17

consistent with Plaintiff's own statement, Plaintiff's Affidavit ¶ 8, that "the reason why the defendant rewrote the statement was because he failed to address the issue of him laughing at plaintiff, until he was informed to do so by way of a fax message dated August 1, 2007 . . . ."  Accordingly, Shope's preparation of Shope's Second Memorandum raises no genuine issue of fact.

Finally, that Plaintiff, at a deposition in connection with a separate lawsuit, was asked only about his knee injury, and not his back injury sustained at Elmira, Plaintiff's Affidavit ¶ 10, raises no issue of fact relevant to the instant action.

Accordingly, Defendant's motion should be GRANTED with regard to the First Cause of Action.


**3.      Second Cause of Action**

In his Second Cause of Action, Plaintiff alleges that despite advising of his physical impairments, Defendant Summers ordered Plaintiff to climb a flight of stairs to attend class at the correctional facility's school, and that while ascending the stairs, Plaintiff's left knee gave out, causing Plaintiff to fall down the stairs, striking his head and back.  Complaint, Second Cause of Action.  In support of summary judgment, Defendants argue that Plaintiff has failed to exhaust administrative remedies relative to this claim, Defendants' Memorandum at 3-7, and that Plaintiff cannot satisfy either the objective or subjective prong of this Eighth Amendment claim, *id.* at 9-10, 12-14.  In arguing in further support of summary judgment, Defendants comment on Plaintiff's failure to argue in opposition to summary judgment on his Second Cause of Action. Murphy Reply Affidavit ¶ 6.

A.      **Failure to Exhaust Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, exhaustion of all available administrative remedies is required before a § 1983 civil rights action challenging prison conditions, including excessive force and prison grievance claims, may be commenced.  28 U.S.C. § 1997e; *Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007) ("'the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  An inmate's failure to exhaust administrative remedies prior to commencing legal action is an affirmative defense, the burden of which is the defendants to prove.  *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir.  2004) (citing *Brown v.  Croak*, 312 F.3d 109, 112 (3d Cir.  2002)).

Exhaustion of administrative remedies under the PLRA must be in compliance with the relevant state agency's procedures.  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Attempts to informally resolve issues do not satisfy the PLRA's exhaustion requirement because they do not allow for "proper exhaustion," including putting the proper prison officials on notice of the alleged problem and avoiding litigation.  *Macias*, 495 F.3d at 44 (citing *Woodford v.  Ngo*, 548 U.S. 81, 94-95 (2006)).

In New York, the administrative exhaustion procedure is promulgated by the Commissioner of DOCS N.Y.Corr. Law § 139 (providing that DOCS commissioner shall

establish grievance resolution committees in each correctional institution under the

commissioner's jurisdiction, and "promulgate rules and regulations establishing such

procedures for the fair, simple and expeditious resolution of grievances as shall be

deemed appropriate, having due regard for the constitutions and laws of the United

States and of the state of New York."). Accordingly, the Commissioner has established

an Inmate Grievance Program ("IGP"), for resolving inmate grievances, 7 N.Y.C.R.R. §

701.1(a), and a three-step review process, 7 N.Y.C.R.R. § 701.5 ("Inmate Grievance

Procedures"), which an inmate must exhaust prior to commencing a § 1983 action.

*Reyes v. Punzal*, 206 F.Supp.2d 431, 432 (W.D.N.Y. 2002). Specifically, an inmate

grievance is first reviewed by the relevant correctional facility's inmate grievance

resolution committee ("IGRP") and, if the inmate is dissatisfied with the IGRP's

recommendation, the inmate may appeal to the facility's superintendent and, if still not

satisfied, may further appeal to the central office review committee ("CORC").

7 N.Y.C.R.R. § 701.1(c)

The Inmate Grievance Procedures require that an inmate must submit a

complaint regarding the grievance "within 21 calendar days of an alleged occurrence on

an inmate grievance complaint form . . . . " 7 N.Y.C.R.R. § 701.5(a)(1).[8]  In the instant

---

[8] The court notes that Elmira Grievance Program Officer/Temporary Supervisor Nowaczyk
indicates that under the relevant New York regulation, 7 N.Y.C.R.R. § 701.7(a)(1), the time in which an
inmate must file an inmate grievance is 14 days from the date of the alleged occurrence, Nowaczyk
Declaration ¶ 3, a plain reading of that regulation reveals the regulation pertains only to the forms and
envelopes to be made available to inmates to provide access to the IGP. Furthermore, 7 N.Y.C.R.R. §
701.5(a)(1) provides that an inmate must file an inmate grievance within 21 days of the alleged
occurrence, which is consistent with the copy of DOCS Direction No. 4040, § 701.5(a)(1), Nowaczyk
Declaration Exh. A, establishing that an inmate grievance must be submitted "to the clerk within twenty-
one (21) calendar days of an alleged occurrence . . . ."  Although no explanation for the inconsistent
deadline for filing an inmate grievance is in the record, it is immaterial because the filing of Plaintiff's
Second Grievance on August 7, 2007 was also within 14 days of the alleged July 30, 2007 incident.

case, that Plaintiff's Second Grievance was timely filed on August 1, 2007, well within

21 days of the July 30, 2007 incident, is not disputed.

After Plaintiff's Second Grievance was denied by the IGRC on August 15, 2007,

although Plaintiff checked a box on the IGRC's Response indicating he disagreed with

the IGRC's finding and wished to appeal to the Superintendent, it is undisputed that

Plaintiff never filed an appeal of his Second Grievance regarding the July 30, 2007

incident.  As such, Plaintiff has failed to exhaust administrative remedies with regard to

his Second Cause of Action, nor has Plaintiff argue that such failure to exhaust

administrative remedies should not bar his Second Cause of Action.

The Second Circuit recognizes three circumstances in which the failure to

comply with the PLRA's exhaustion requirement, will not bar an inmate's civil rights

action.  *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004).  These circumstances occur

> when (1) administrative remedies are not available to the prisoner; (2)
> defendants have either waived the defense of failure to exhaust or acted in such
> a way as to estop them from raising the defense; or (3) special circumstances
> such as a reasonable misunderstanding of the grievance procedures, justify the
> prisoner's failure to comply with the exhaustion requirement.

*Ruggiero v.  County of Orange*, 467 F.3d 170, 175 (2d Cir.  2006) (citing *Hemphill v.
New York*, 380 F.3d 680, 686 (2d Cir.  2004)).[9]

The PLRA's exhaustion of available administrative remedies requirement includes

---

[9] Although the Second Circuit indicated in *Ruggiero*, 467 F.3d at 176, that it had yet to determine what effect the Supreme Court's holding in *Woodford*, 548 U.S. at 81 (requiring "proper exhaustion" of administrative remedies "using all steps that the agency holds out, and doing so *properly*."  (italics in original)), the Second Circuit recently vacated and remanded a district court's grant of summary judgment dismissing an inmate's civil rights action on the basis that the inmate plaintiff had failed to exhaust administrative remedies because the district court had failed to conduct the three-step inquiry set forth in *Hemphill* to determine whether the inmate's failure to exhaust was excusable.  *Cosme v.  Furman*, 374 Fed.Appx.  232, 233 (2d Cir. 2010).  *Cosme* strongly suggests the Second Circuit considers *Hemphill*'s three-step inquiry is still relevant regardless of any suggestion to the contrary by *Woodford*.

filing an appeal of the IGRP's decision with the CORC.  *See Davis v.  New York*, 311 Fed.Appx.  397, 399 & n. 2 (2d Cir.  2009) (affirming district court's judgment of dismissal for failure to exhaust administrative remedies where inmate plaintiff admitted failing to appeal grievance to the IGRC).  In the instant action, however, even a liberal construction of Plaintiff's papers, *Triestman*, 470 F.3d at 474-75, fails to establish any material issue of fact which, if decided in Plaintiff's favor, could excuse Plaintiff's failure to exhaust administrative remedies relative to this claim, particularly his failure to appeal the unfavorable disposition of this grievance.

Accordingly, Defendants' motion seeking summary judgment should be GRANTED as to Plaintiff's Second Cause of Action for failing to exhaust administrative remedies.  Alternatively, because the matter is before the undersigned for a report and recommendation, Defendants' other arguments in support of summary judgment on the Second Cause of Action are addressed in the interest of completeness.

### B.      Failure to Argue in Opposition to Summary Judgment

Plaintiff's failure to oppose Defendants' motion seeking summary judgment on this claim, by itself, gives the court reason to deem the claim abandoned.  *See Molinari v. Bloomberg*, 564 F.3d 587, 609 n. 15 (2d Cir. 2009) (deeming abandoned claim to which appellant offered no response to appellees' argument on appeal); *Kuebel v. Black & Decker (U.S.) Inc.*, 2010 WL 1930659, at * 1 (W.D.N.Y. May 12, 2010) (citing *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.")

(citing *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 393 (S.D.N.Y. 1998) (collecting cases))).  As such, Defendants' motion should be GRANTED in favor of Defendants on this claim.  Alternatively, because the matter is before the court for a report and recommendation, the court addresses the merits of this claim.

### C.      Merits of Second Cause of Action

Defendants argue in support of summary judgment that at the time of Plaintiff's fall down the stairs on July 30, 2007, Defendant Summers was stationed at his regular post in Plaintiff's housing unit, C-Block, which is located in the end of the correctional facility opposite from the stairs from which Plaintiff fell.  Defendants' Memorandum at 9; Summers Declaration ¶ 4.  As such, Summers merely permitted Plaintiff to leave his cell to attend a law library call-out Plaintiff had requested.  Defendants' Memorandum at 10; Summers Declaration ¶ 7.  Furthermore, because an inmate who wishes to be approved for a library call-out must submit a library call-out slip, if Plaintiff wished to avoid walking up the stairs to the correctional facility's law library, Plaintiff should not have submitted the library call-out slip.  Defendants' Memorandum at 10; Summers Declaration ¶¶ 5-6.  Furthermore, if Plaintiff, while incarcerated at Elmira, had a medical permit restricting Plaintiff from climbing stairs, it was Plaintiff's responsibility to present such medical permit to the officer posted near the law library stairway, rather than to Summers, who was posted in C-block at the other end of the correctional facility. Defendants' Memorandum at 13; Summers Declaration ¶ 10.  As discussed, Discussion, *supra*, at 22-23, Plaintiff has not responded in opposition to Defendants' motion, including these points, on his Second Cause of Action.

Plaintiff's failure to argue in opposition to summary judgment on his Second

Cause of Action is significant insofar as Plaintiff has conceded to Summers' assertions

that Summers was not the corrections officer stationed at the staircase to the

correctional facility's law library on July 30, 2007, and that Plaintiff never presented to

Summers any medical permit indicating Plaintiff was restricted from climbing stairs, thus

potentially satisfying the requirement that Defendant failed to act with the requisite

degree of deliberate indifference to Plaintiff's safety.

Although on November 17, 2006, Plaintiff, then incarcerated at Great Meadow,

had obtained a medical restriction against stair climbing, Plaintiff's Exhs. at 3, Plaintiff,

upon being transferred to Elmira, failed to obtain a new medical restriction, such that no

DOCS employee at Elmira would have known that Plaintiff's physical impairments, even

if obvious, precluded Plaintiff from climbing the stairs.  Not only does Plaintiff not

dispute he never produced a medical permit restricting him from climbing stairs, as was

Plaintiff's responsbility, but the only copy issued by Elmira is undated, Plaintiff's Exhs.

at 29, and Plaintiff's medical records indicate that notice was not given by Elmira's

Health Services Unit to the Program Committee regarding Plaintiff's restriction as to

stair climbing until July 30, 2007, at 7:00 P.M., several hours after Plaintiff fell.  *See*

Plaintiff's Exhs. at 24 (Ambulatory Health Record indicating that at 1:30 P.M. on July 30,

2007, Plaintiff was placed on a back board with a cervical collar and transported by

ambulance to the local emergency room after falling down the steps leading to the

correctional facility's school, and hitting his head and back); and 28 (Ambulatory Health

Record indicating that at 7:00 P.M. on July 30, 2007, after Plaintiff returned from the

emergency room, a notice to the Program Committee was prepared advising that

Plaintiff had a permanent restriction against climbing stairs).  Such evidence is consistent with the IGRC Response to Plaintiff's Second Grievance, reporting that upon investigating the July 30, 2007 incident, the IGRC was unable to find any medical order excusing Plaintiff from climbing stairs at Elmira, although acknowledging Plaintiff did have such an order at a previous correctional facility.  Plaintiff's Exhs. at 27.

On this record, Plaintiff cannot establish a genuine issue of material fact as to whether Summers acted with deliberate indifference to any unreasonable risk to Plaintiff's health or safety necessary to support Eighth Amendment claims based on prison conditions. *Phelps*, 308 F.3d at 185.  Defendants' motion should be GRANTED as to Plaintiff's Second Cause of Action.


**4.     Qualified Immunity**

Alternatively, Defendants argue they are qualifiedly immune from liability in the instant action.  Defendant's Memorandum at 15-18.  Plaintiff has not argued in opposition to Defendants' assertion of qualified immunity.

The doctrine of qualified immunity "shields a government official acting in an official capacity from suit for damages under § 1983 unless the official 'violated clearly established rights of which an objectively reasonable official would have known.'" *Blouin v. Spitzer*, 356 F.3d 348, 359 (2d Cir. 2004) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).  "The determination generally involves a two-step inquiry: do the facts alleged show the officer's conduct violated a constitutional right, and, if so, was the right in question clearly established?" *Blouin, supra* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Further, without allowing an opportunity for discovery,

summary judgment can rarely be granted on the issue of qualified immunity "'where the claimant's description of the events suggests that the defendants' conduct was unreasonable, and the facts that the defendants claim are dispositive and are solely within the knowledge of the defendants and their collaborators . . . .'" *Demarco v. Sadiker*, 100 F.3d 1321, 1321 (2d Cir. 1999) (quoting *Castro v.  United States*, 34 F.3d 106, 112 (2d Cir. 1994)).  Here, the record before the court fails to establish that qualified immunity shields Defendants from the instant litigation.

In particular, the facts, as alleged in the Complaint, and the evidence in the record, construed and viewed in the light most favorable to Plaintiffs as required on summary judgment, *Haines*, 404 U.S. at 520 (complaint), *Rattner*, 930 F.2d at 209 (evidence), support that Defendants violated Plaintiff's Eighth Amendment right prohibiting Defendants from acted with deliberate indifference to an unreasonable risk to Plaintiff's health or safety necessary to support Eighth Amendment claims based on prison conditions which, at the time of the alleged violations, was established.  *Phelps*, 308 F.3d at 185.  Moreover, on this record, the court finds that if the facts as alleged by Plaintiff are established at trial, no reasonable corrections officer could reasonably believe he was not violating Plaintiff's constitutional rights.  *Saucier*, 533 U.S. at 201.

As such, Defendants' motion seeking summary judgment, insofar as it alternatively asserts the defense of qualified immunity, should be DENIED.

## __CONCLUSION__

Based on the foregoing, Defendants' motion for summary judgment (Doc. No. 19), should be GRANTED, and the Clerk of the Court should be directed to close the file; alternatively, Defendants' motion based on qualified immunity should be DENIED.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       March 7, 2011
                    Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        March 7, 2011
                     Buffalo, New York

28